United States District Court
Southern District Of Texas
FILED

FEB 12 2020

David J. Bradley, Clerk

United States District Court
Southern District of Texas
**ENTERED**
February 14, 2020
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| ROBERTO CARLOS AGUILERA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:19-CV-00155 |
| § | |
| FRANK LOZANO, et al. § | |
| § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION

Plaintiff, Roberto Carlos Aguilera, a state prisoner proceeding *pro se* and *in forma pauperis* ("IFP"), brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 against two state prosecutors, a state trial judge, and his defense attorney. (Dkt. Nos. 1, 3).

The case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b). After review of the record and relevant law, the undersigned respectfully recommends that Plaintiff's § 1983 claims against all Defendants be **DISMISSED with prejudice** for failing to state a claim and for frivolousness, and Plaintiff's state law claims be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

### I. BACKGROUND AND SUMMARY OF THE CLAIMS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), serving a 12-year sentence for aggravated assault with a deadly weapon.[1] Plaintiff's complaint was received and filed in federal court on March 29, 2019. (Dkt. No. 1 at 1). Plaintiff subsequently filed an amended complaint that was received and filed in federal court on

---

[1] Offender Information Search, Texas Department of Criminal Justice, https://offender.tdcj.texas.gov/ OffenderSearch/offenderDetail.action?sid=05423723 (last visited Jan. 24, 2020).

April 25, 2019. (Dkt. No. 3). Plaintiff was granted leave to proceed IFP on May 3, 2019. Order Granting Application to Proceed In Forma Pauperis, *Aguilera v. Lozano*, 7:19-MC-0490 (S.D. Tex. May 3, 2019).[2]

Plaintiff names four defendants: Cameron County Assistant District Attorney Frank Lozano; Cameron County District Attorney Luis V. Saenz; Judge Janet Leal of the 103rd District Court, Cameron County; and defense counsel Carlos H. Cisneros. (Dkt. No. 3 at 2-3, 66). Plaintiff claims that "each of these Defendants were involved in my case with intrapment [sic] and corruption," that "[t]hey all lied, help falsefide [sic] government document[s]," and that "[e]ach and everyone of them played a part, in all this corruption against me and my case." (*Id.* at 4).

Plaintiff's pro se complaint must be read indulgently. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The undersigned finds two sets of constitutional claims raised in Plaintiff's amended complaint. The undersigned liberally interprets Plaintiff's first argument to be that his 3G misclassification has unconstitutionally delayed his eligibility for parole. Plaintiff's second argument is that his defense counsel rendered ineffective assistance.[3]

Plaintiff alleges that Assistant District Attorney Frank Lozano "made [an] erroneous statement with the expressed intent to discredit defendant, and for this information to be used by

---

[2] The undersigned notes that no service of process was issued and more than 90 days have passed since Plaintiff's complaint was filed. However, the 90-day service period under Rule 4(m) is tolled while the court screens a prisoner's complaint pursuant to § 1915(e) or § 1915A. *See Keller v. United States*, 444 F. App'x 909, 912 (7th Cir. 2011) ("Other circuits have adopted a categorical rule that, because a pro se prisoner proceeding *in forma pauperis* is at the mercy of the district court, the time used for screening by the court automatically extends the . . . deadline of Rule 4(m)."); *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *Balistreri-Amrhein v. Verrilli*, No. 4:16-CV-112, 2017 WL 3895982, at *2 (E.D. Tex. Sept. 6, 2017) ("[A] court may withhold service where the plaintiff proceeds *in forma pauperis* pending the court's screening of the complaint for frivolousness under Section 1915."); *Coleman v. Colvin*, No. 3:16-CV-2608-D-BK, 2017 WL 2348812, at *1 (N.D. Tex. Apr. 13, 2017) (court had granted IFP status, but did not issue process pending preliminary screening).

[3] Plaintiff asserts claims for "negligence, willful deprivation of my due process, [and] tortious action." (Dkt. No. 3 at 4, 66). Plaintiff's "negligence" and "tortious action" claims are addressed in a separate section.

T[exas] Dept. Criminal Justice, to misclassify defendant, by stating that defendant was previously charged with murder, but was not convicted of such a crime." (*Id.* at 66). Plaintiff alleges that Cameron County District Attorney Luis Saenz "failed to verify info about the accurateness of actual charges or pas[t] charges when fact finding is necessary, when responding to grounds and points of errors, when Defendant files 11.07 writ of habeas corpus [sic]." (*Id.*). Plaintiff attached multiple exhibits to his amended complaint, including the State's response to Plaintiff's state petition for writ of habeas corpus, filed pursuant to Article 11.07 of the Texas Code of Criminal Procedure. (Dkt. No. 3 at 53). The State's response includes a description of the history of Plaintiff's case, stating that Plaintiff was "indicted on November 2, 2016, on one count of Murder and one count of Aggravated Assault with a Deadly Weapon." (*Id.*).

In his complaint, Plaintiff claims that he "was never charged with murder" and asks, "why are they saying I had a murder charge?" (*Id.* at 5). Plaintiff alleges that, as a result of the prosecutors' actions, he has been incorrectly classified as a "3G" offender and has suffered "mental and emotional distress" and depression. (*Id.* at 4, 5, 67). Plaintiff contends that this misclassification forces him to serve "at least ½ of his sentence before being eligible for parole consideration." (*Id.* at 67).

Plaintiff alleges that District Judge Janet Leal "fail[ed] to oversee the actions of the officers within Court" and that she "allow[ed] Asst. Dist. Atty [sic] to make a[n] untrue statement which clearly shows harm to the Defendant [sic]." (*Id.* at 66-67).

Plaintiff also brings a Sixth Amendment ineffective assistance of counsel claim. Plaintiff alleges that his defense counsel, Carlos Cisneros, rendered ineffective assistance for "failing to mount an [adequate] defense," for "back dating the defendant['s] rights to an appeal" which was "gross neglect," and for refusing to share the State's discovery with him. (*Id.* at 66).

Plaintiff seeks monetary relief, apparently against all Defendants, asking that the Court "award me something for pain [and] suf[f]er[r]ing," (Dkt. No. 3 at 5), "650,000 to 900,000,"[4] (*id.*), or "a monetary scale of $1750 to $3500 a day . . . for damages from day 1 of time in the custody of the Texas Department of Criminal Justice," (*id.* at 67).

Plaintiff also requests equitable relief, asking that the Court order "that the trial court make a correction to its records to reflect the previously stated murder charge be removed and corrected."[5] (Civ. Dkt. No. 3 at 67). Plaintiff asks that the Court grant him parole or a "sentence reduction." (*Id.* at 5; Dkt. No. 1 at 4).

## II. RELEVANT LAW AND ANALYSIS

### A. Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act ("PLRA"), the Court shall dismiss a case at any time if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A.[6]

A complaint may be dismissed as frivolous if the claim lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989). The plaintiff's factual allegations must be weighted in favor of the plaintiff unless they are clearly baseless. *Hernandez*, 504 U.S. at 32-33. Under the PLRA, a court may "pierce the veil of the complaint's factual allegations," and dismiss the complaint as factually frivolous if the facts alleged are "fanciful," "fantastic," or "delusional." *Id.* This inquiry can be guided by judicially

---

[4] Presumably $650,000-$900,000 damages.

[5] Plaintiff also asks this Court to "stop all the corruption." (Dkt. No. 3 at 5; Dkt. No. 1 at 4).

[6] Plaintiff's action is subject to screening regardless of whether he proceeds *in forma pauperis*. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).

noticeable facts. *Id.*; *Brown v. Philadelphia*, 331 F. App'x 898, 900 (3d Cir. 2009). A court may not dismiss the complaint, however, simply because it finds the allegations unlikely. *Id.* A complaint is *not* factually frivolous if it could be remedied through more specific pleading. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998); *Hernandez*, 504 U.S. at 33-34.

"A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). Dismissal of a complaint for failure to state a claim standard under the PLRA is distinct from the failure to state a claim standard in Federal Rule of Civil Procedure 12(b)(6), although the two have "considerable common ground." *Neitzke*, 490 U.S. at 325-28. If a complaint raises an arguable question of law which is ultimately resolved against the plaintiff, dismissal would be appropriate under Rule 12(b)(6), but not under the PLRA. *Id.*; *Moore v. Mabus*, 976 F.2d 268, 269-70 (5th Cir. 1992).

### B. Claims Against Defendants Lozano, Saenz, and Leal

Plaintiff argues that the state prosecutors and state judge are to blame for his alleged "3G" misclassification and asks that the "trial court make a correction to its records" to "remove" the murder charge, which would supposedly correct this error. (Dkt. No. 3 at 67). Plaintiff asserts that he should not fall under the "3G" offender classification which requires that he must "serve at least [one-half] of his sentence before being eligible for parole consideration." (*Id.*).

"3G" or "3g" offenses are a series of aggravated offenses that were once listed in Article 42.12 Section 3g of the Texas Code of Criminal Procedure but have been since recodified in Article 42A.054. *See Ogles v. L. Wingate IPO II*, No. A-16-CA-978-SS, 2016 WL 4597640, at *1 (W.D. Tex. Sept. 1, 2016) (citing to "3g" offenses as listed in Section 3g of Article 42.12). Although normally an inmate's eligibility for parole is a function of the amount of good-time credit that he

earns and the length of his imposed sentence, "an inmate's underlying criminal conviction also affects his eligibility for early release on parole." *Strickland v. Quarterman*, No. CIV.A. H-07-0506, 2007 WL 2409220, at *4 (S.D. Tex. Aug. 20, 2007). Namely, if a defendant's crime of conviction is a "3G" offense, by state law, he is "not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years." Tex. Gov't Code § 508.145(d)(1)-(2).

Plaintiff asserts that he is being unlawfully delayed his eligibility for parole. Section 1983 appears to be the appropriate vehicle for this kind of claim. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (claims brought properly under § 1983, not § 2254, where claims will only speed *consideration* of parole application); *Crow v. Quarterman*, No. CIV.A. G-07-0096, 2008 WL 3539738, at *4 (S.D. Tex. Aug. 13, 2008) (claims cognizable under § 1983, rather than § 2254, where plaintiff asserts that prison officials have incorrectly calculated his good-time credits, thereby delaying his eligibility for parole); *Strickland v. Quarterman*, No. CIV.A. H-07-0506, 2007 WL 2409220, at *2 (S.D. Tex. Aug. 20, 2007) (same). For the reasons discussed below, the undersigned recommends that Plaintiff's claims be dismissed for failure to state a claim and frivolity.

There are two ways for a Texas inmate to become eligible for early release: parole and mandatory supervision.[7] *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007). Plaintiff alleges he is being unlawfully delayed parole eligibility, because he must serve "at least ½ of his

---

[7] Mandatory supervision is not at issue in this case. While his underlying crime is not a 3G offense and does not affect his eligibility for parole, it does affect his eligibility for mandatory supervision. An inmate may not be released to mandatory supervision if he is serving a sentence for, or has been previously convicted of, aggravated assault. *See* Tex. Gov't Code § 508.149(a)(7). Plaintiff is also disqualified from mandatory supervision because of his conviction for burglary of a habitation. *See State v. Aguilera*, No. 96-CR-000163 (138th Dist. Ct., Cameron County, Tex. May 28, 1996); Tex. Gov't Code § 508.149(a)(13).

sentence" before becoming eligible for parole. (Dkt. No. 3 at 66-67). No constitutional violation arises because Plaintiff has no constitutional right to parole. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). A state has no duty to establish a parole system. *Id.*

The Supreme Court recognized that, once established, if the state statutory scheme creates an "expectancy of release," then that expectation is entitled to "some measure of constitutional protection." *Id.* at 12. The Fifth Circuit, however, has found that the Texas statutory scheme does not create a protectable expectancy of release on parole. *Maldonado v. Collier*, 266 F. App'x 375, 376 (5th Cir. 2008) ("[Prisoner] contends that the defendants violated the Due Process Clause and impinged on his vested liberty interest in a properly-calculated parole eligibility date. Texas has not created a constitutionally-protected liberty interest in parole or in the procedures attendant to parole decisions."); *Teague v. Quarterman*, 482 F.3d 769, 774 (5th Cir. 2007) ("[T]here is no right or constitutional expectancy of early release on parole in Texas, because parole is within the total and unfettered discretion of the State."); *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981). As such, Plaintiff fails to state a constitutional claim based on his delayed eligibility for parole.

Furthermore, Plaintiff's argument is legally and factually frivolous. Plaintiff has attached a copy of his judgment of conviction to his complaint. (Dkt. No. 3 at 13-14). Plaintiff's own exhibits reflect only a conviction for aggravated assault with a deadly weapon pursuant to a guilty plea. (*Id.*). Plaintiff's offense history maintained by the TDCJ reflects that Plaintiff is currently serving a sentence for an aggravated assault with a deadly weapon conviction and makes no mention of a murder conviction. *See supra* note 1. The records before the Court are consistent

with Plaintiff's assertion that he has never been convicted of murder, and any correction of the court's records on that matter appears unnecessary.

Plaintiff's conviction for aggravated assault with a deadly weapon was not a 3G offense. His offense does not subject him to delayed parole eligibility under Texas Government Code Section 508.145(d)(1)(B), because there was no affirmative deadly weapon finding as required under Art. 42A.054(c) or (d). The judgment reflects that Plaintiff was convicted of aggravated assault with a deadly weapon. (Dkt. No. 3 at 13-14). The judgment also states, however, that under the terms of the plea bargain, there is "no finding of [a] deadly weapon." (*Id.*). A defendant's conviction will be considered a "3G" offense if it is shown that a "deadly weapon . . . was used or exhibited" during the "commission of a felony offense" by the defendant. Tex. Code Crim. P. Art. 42A.054(b)-(d). Texas law requires that upon "an affirmative finding regarding the use or exhibition of a deadly weapon . . . the trial court shall enter the finding in the judgment of the court." *Id.* The Texas Court of Criminal Appeals has found that a trial judge has the "discretion to decline to make a deadly-weapon finding, even when the use of a deadly weapon is a necessary element of the charged offense." *Guthrie-Nail v. State*, 506 S.W.3d 1, 4 (Tex. Crim. App. 2015) ("An affirmative deadly-weapon finding must be an 'express' determination in order to be effective."). Thus, Judge Leal explicitly declined to make a 3G finding.

Plaintiff focuses on a single sentence written in the State's response to his Article 11.07 petition for writ of habeas corpus, stating that Plaintiff was charged with murder. (*See* Dkt. No. 3 at 53). The fact that Plaintiff may have been *charged* with a more serious crime is of no import. By the plain text of the statute, "[t]his subsection applies only to an inmate who is *serving a sentence for*" a 3G offense. Tex. Gov't Code § 508.145(d)(1)-(2) (emphasis added). Crimes Plaintiff was not convicted of have no impact on when Plaintiff will become eligible for parole.

The nature of the underlying crime for which he is currently serving a sentence for will determine whether his parole eligibility is restricted under § 508.145(d).

Based on his pleadings and attached exhibits, Plaintiff does not show that the Defendants' actions are the cause of his delayed parole eligibility. If prison officials have erroneously calculated Plaintiff's parole eligibility date, then the named Defendants have little, if anything, to do with that error. The crux of Plaintiff's injury is that the parole board has allegedly miscalculated his eligibility date *in spite of* the state court judgment. The Defendants cannot answer for the Texas Board of Pardons and Paroles. Even if Plaintiff were to have named the correct defendant, however, his complaint would still be subject to dismissal under the PLRA.

This leads to the denouement of this story. The TDCJ website shows that the Board of Pardons and Paroles most recently denied Plaintiff parole on January 24, 2019, and his next parole review is scheduled for August of 2020. *Parole Review Information*, Tex. Dep't Crim. Justice, https://offender.tdcj.texas.gov/OffenderSearch/reviewDetail.action?sid=05423723&tdcj=021968 06&fullName=AGUILERA%2CROBERTO+CARLOS (last visited Feb. 7, 2020). Multiple reasons are listed for the denial of parole; none of those reasons explicitly reference a 3G offense. *Id.* The undersigned further notes that Plaintiff's parole eligibility date is "2018-04-10" which shows that Plaintiff is currently considered eligible for parole. *Offender Information Details*, Tex. Dep't Crim. Justice, https://offender.tdcj.texas.gov/OffenderSearch/offenderDetail.action?sid=05423723 (last visited Feb. 7, 2020). If Plaintiff's underlying conviction was a 3G offense, by statute, he would not yet be eligible for parole. Tex. Gov't Code § 508.145(d). The fact that the publicly available TDCJ information for Plaintiff reflects a parole eligibility date of April 10, 2018, and that Plaintiff has been reviewed (albeit denied) for parole shows that Plaintiff is not being treated as a non-eligible 3G offender.

The undersigned recommends that Plaintiff's § 1983 claims against Defendants Lozano, Saenz, and Leal be dismissed with prejudice for both failing to state a claim for which relief can be granted and frivolousness.[8]

### C.  Claim Against Defense Counsel

Plaintiff alleges that his defense counsel, Carlos Cisneros, rendered ineffective assistance for "failing to mount an [adequate] defense," for "back dating the defendant['s] rights to an appeal" which was "gross neglect," and for refusing to share the State's discovery with him. (Civ. Dkt. No. 3 at 66).

Although Plaintiff does assert a constitutional violation (his Sixth Amendment right to effective counsel), Plaintiff's claims against his defense attorney are legally frivolous.[9] Section 1983 actions require a showing that the plaintiff was (1) deprived of a constitutional right (2) by someone *acting under color of state law*, and defense attorneys are not state actors. *See Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983) ("[T]he lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983."); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)) ("Hudson's claims against Hughes for ineffective assistance is not

---

[8] The undersigned further notes that the governmental defendants enjoy absolute prosecutorial and judicial immunity. *Beck v. Tex. State Bd. Of Dental Exam'rs*, 204 F.3d 629, 634, 637 (5th Cir. 2000) (citing *Burns v. Reed*, 500 U.S. 478, 491 (1991)). Prosecutorial immunity applies to a prosecutor's actions in pursuing prosecution and extends to activities "intimately associated with the judicial phase of the criminal process." *Id.*; *Kerr v. Lyford*, 171 F.3d 330, 336 (5th Cir. 1999) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotations omitted); *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009). Judges are afforded absolute immunity when they perform a normal judicial function, unless they are acting in the clear absence of jurisdiction. *Briscoe v. Lahue*, 460 U.S. 325, 334 (1983); *Stump v. Sparkman*, 435 U.S. 349, 357-60 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). "A claim against a defendant who is immune from suit is frivolous because it is based upon an indisputably meritless legal theory." *Booker v. Koonce*, 2 F.3d 114, 116 (5th Cir. 1993).

[9] The undersigned notes that Plaintiff has a pending 28 U.S.C. § 2254 habeas corpus petition in the Southern District of Texas, in which he brings ineffective assistance claims against Mr. Cisneros. *Aguilera v. Davis*, 7:19-CV-00151 (S.D. Tex. 2019).

cognizable in this section 1983 action because his attorney is not a state actor."); *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[P]rivate attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983."). Based on Plaintiff's pleadings, he has not stated a cognizable claim under § 1983 against Mr. Cisneros.

For the above reasons, the undersigned recommends that Plaintiff's claim against his defense counsel be dismissed with prejudice as legally frivolous.

D.    **State Law Claims**

Having recommended dismissal of Plaintiff's § 1983 claims, the undersigned must also address the fate of Plaintiff's state law claims. Plaintiff has filed suit pursuant to § 1983, which only affords relief for violations of constitutional rights. However, Plaintiff asserts "negligence" and "tortious action" against the defendants. (Dkt. No. 3 at 4-5). In an abundance of caution, the undersigned will address these allegations as state law claims distinct from Plaintiff's liberally construed constitutional claims.

Plaintiff asserts that the state prosecutors acted negligently because they had a duty "to verify info[rmation]" regarding Plaintiff's "pas[t] charges" before including that information in their response to Plaintiff's petition for writ of habeas corpus. (Dkt. No. 3 at 4, 66). Plaintiff alleges that the prosecutors violated Texas Code of Criminal Procedure Article 2.01, which provides that the duty of a district attorney is to see that justice is done. (*Id.*). Plaintiff also holds Judge Leal responsible—apparently based on some theory of vicarious liability—because she "[failed] to oversee the actions of the officers within [the] court." (*Id.*). Judge Leal is supposedly

liable because she violated Canons 3 and 4 of the Texas Code of Judicial Conduct.[10] (*Id.*). Additionally, Plaintiff may be raising a tort claim against Mr. Cisneros in conjunction with his ineffectiveness claim, because he takes care to argue that Mr. Cisneros violated "the T[exas] lawyer['s] creed," which requires an attorney to owe his "allegiance [to a client]" and to "protect and advance the client's legitimate rights, claims, and objectives." (*Id.*).

Negligence and other tort actions are not independently cognizable claims under § 1983. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). "[O]ne must allege 'the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the statute of a violation of the Constitution.' " *Rankin v. City of Wichita Falls, Tex.*, 762 F.2d 444, 447 (5th Cir. 1985). The Supreme Court has reasoned that, because § 1983 has no state-of-mind requirement, a negligent act *may* very well cause a deprivation of a plaintiff's constitutional right; however, the basis for a § 1983 suit must be the constitutional violation itself, therefore, "depending on the right, merely negligent conduct may not be enough to state a claim." *Daniels v. Williams*, 474 U.S. 327, 330 (1986). "That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests"—for example, state legislatures have enacted tort claim statutes which provide an avenue for relief elsewhere. *Id.* at 333. Generally, however, § 1983 is not the appropriate vehicle for tort claims.

---

[10] Canon 3 relates to "Performing the Duties of Judicial Office Impartially and Diligently" and Canon 4 relates to "Conducting the Judge's Extra-Judicial Activities to Minimize the Risk of Conflict with Judicial Obligations." *See* Tex. Code of Judicial Conduct (Tex. Sup. Ct. 2019).

Of course, Plaintiff brought his state law claims together with his § 1983 claims, which are claims invoking original jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 180 (1997) ("The court exercises original . . . jurisdiction [over § 1983 claims]."). Because his state law claims are intertwined with his § 1983 claims, a federal court would have supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a). However, a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). If the District Court chooses to dismiss Plaintiff's § 1983 claims, then the District Court may dismiss Plaintiff's state law claims without prejudice pursuant to § 1367(c)(3).

While it appears that Plaintiff's tort claims are based on meritless legal theories, the undersigned believes it would be more appropriate to have Plaintiff litigate his claims in state court, rather than to have a federal court pass on the merits of these claims. The general rule is that a district court "should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *See Behrghundi v. Save Our City-Mart, Texas*, No. 1:19-CV-402-LY, 2019 WL 7037939, at *5 (W.D. Tex. Dec. 20, 2019); *Clay v. Freebird Publishers*, No. CV H-19-3937, 2020 WL 529707, at *2 (S.D. Tex. Jan. 31, 2020). The undersigned recommends that Plaintiff's state law claims be dismissed without prejudice.

### III. CONCLUSION

#### *Recommended Disposition*

After review of the record and relevant law, the undersigned respectfully recommends that Plaintiff's § 1983 claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim and frivolousness, and Plaintiff's state law claims be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

*Notice to the Parties*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

The clerk of this court shall forward a copy of this report to the parties by any receipted means.

SIGNED this 12th day of Februrary, 2020, at McAllen, Texas.

J. SCOTT HACKER
United States Magistrate Judge